**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **ROBYN RENEE ESSEX**<br><br>**Plaintiff,**<br><br>**GREG A. SMITH,**<br>**BRENDA LANDWEHR and**<br>**GARY MASON,**<br><br>**Intervenor-Plaintiffs**<br><br>**v.**<br><br>**KRIS W. KOBACH,**<br>**Kansas Secretary of State**<br><br>**Defendant.** | ) | **CIVIL ACTION**<br><br>**Case No. 12-CV-04046** |

**TRIAL BRIEF OF INTERVENOR-PLAINTIFFS BRENDA LANDWEHR,**

**GARY MASON AND GREG A. SMITH**

## A. Question Presented.

Intervenor-Plaintiffs Brenda Landwehr, Gary Mason, and Greg A. Smith, all of whom have duly and publicly filed for election to the Kansas Senate in 2012, have intervened in this action solely to address the 2012 reapportionment of Kansas Senate districts. They seek to protect their interest in ensuring that any 2012 reapportionment of Kansas Senate districts is constitutional and otherwise legal, fair and just. They submit a single question for this Court: Which Kansas Senate district reapportionment plan best ensures the configuration of new Senate districts as equal in population as practical within constitutionally-acceptable population deviations, considering the limitations of Census geography, and the additional legal requirements that such

plan will have neither the purpose or effect of diluting minority voting strength; districts drawn shall be as compact as possible and contiguous; the integrity and priority of existing political subdivisions shall be preserved to the extent possible; similarities of social, cultural, racial, ethnic and economic communities of interest shall be recognized; districts shall be drawn to avoid election contests between incumbent members of the Legislature wherever possible; and districts shall be easily identifiable and understandable by the voters.

**B. Governing Legal Standards.**

Article I, § 2 of the United States Constitution requires that any voting plan must guarantee that "as nearly as is practicable one man's vote in a congressional election . . . to be worth as much as another's." *Wesberry v. Sanders*, 376 U.S. 1, 7-8 (1964); *see also Reynolds v. Sims*, 373 U.S. 533, 560-61 (1964). Although this standard only applies in congressional voter district challenges, similar – but less demanding – concepts of fair representation, which have their basis in the Equal Protection Clause of the Fourteenth Amendment, are applied to drawing maps for state legislative voting districts. *See Brown v. Thomson*, 462 U.S. 835, 842-43 (1983) (citing cases establishing that generally an apportionment plan with a maximum population deviation under 10% is considered a "minor deviation" from mathematical equality); *Reynolds*, 373 U.S. at 557; *Marylanders for Fair Representation v. Schaefer*, 849 F. Supp. 1022, 1030-31 (D. Md. 1994) (citing *Gaffney v. Cummings*, 412 U.S. 735, 748 (1973)).

Frequently, courts hear challenges to apportionment maps that have been passed by a state legislature and signed into law by the state's governor. *See, e.g.*, *Graham v. Thornburgh*, 207 F. Supp. 2d 1280, 1280 (D. Kan. 2002); *Kirkpatrick v. Priesler*, 394 U.S. 526 (1969). Here, however, the Kansas Legislature effectively concluded their work for the 2012 legislative year without passing a bill reapportioning Kansas's voting districts. *See* Joint Stipulation, Paragraphs

40-42. And, although redistricting is typically the state legislature's task, this Court has the jurisdiction and constitutional duty to complete the task when the legislature fails to do so. *See White v. Weiser*, 412 U.S. 783, 794-95 (1973); *O'Sullivan v. Brier*, 540 F. Supp. 1200, 1202 (D. Kan. 1982). In doing so, the Court, while not bound by any particular redistricting plan proposed or considered but not passed by the Legislature, should give such plans "thoughtful consideration." *See O'Sullivan*, 540 F. Supp. at 1202. Accordingly, so long as the Court respects the requirement that each individual's vote, "as nearly as practicable," be worth as much as another's, this Court may adopt one of the plans passed or considered by either the House or the Senate, it may modify one of those plans, or it may create an entirely new plan. *Id.*; *see also Brown*, 462 U.S. at 842-43.

When considering among available maps that produce similar levels of population equality, this Court considers five primary factors that are sometimes known as "traditional districting principles." *See generally Shaw v. Reno*, 509 U.S. 630, 647 (1993) (referring to compactness, contiguity, and respect for political subdivisions as objectively defensible districting policies); *Carstens v. Lamm*, 543 F. Supp. 68, 82 (D. Colo. 1982) (recognizing no reasonable case can be made for one map over another solely under the constitutional one man-one vote principal when they achieve virtually identical levels of population equality). First, the inquiry considers whether a proposed plan preserves county and municipal boundaries, as fragmentation of such known and respected political units frustrates the ability of constituencies to organize effectively and increases the likelihood of voter confusion. Second, the Court looks to whether any of the proffered plans dilute the vote of any racial minority. Third, consideration is given to whether a plan creates districts that are "compact and contiguous" so as to prevent political gerrymandering, reduce electoral costs, and increase the effectiveness of voter representation.

Fourth, voting plans that preserve existing district boundaries are preferred. The fifth and final component of the inquiry is whether a plan "groups together communities sharing common economic, social, or cultural interests." *O'Sullivan*, 540 F. Supp. at 1204. These "traditional districting principles" long recognized by the courts have been adopted in the Kansas Legislature's "Guidelines and Criteria for 2012 Kansas Congressional and Legislative Redistricting" ("Guidelines"). *See* Joint Stipulation, Paragraph 45 & Ex. 9.

**C. Statement of Facts.**

Facts stipulated to by the parties, or to be adduced at trial from the testimony of Intervenors Landwehr, Mason and Smith, among others, will establish the following:

1. Intervenor Landwehr is a current member of the Kansas House of Representatives and a duly filed and declared candidate for election to current District 25 of the Kansas Senate in 2012, a district in which she has resided since 1980. Intervenor Mason is a duly filed and declared candidate for election to current District 31 of the Kansas Senate in 2012, a district in which he has resided since April 1999. Intervenor Smith is a current member of the Kansas House of Representatives and a duly filed and declared candidate for election to current District 8 of the Kansas Senate, a district in which he has resided since the 1990s.
2. Landwehr publically filed with the Kansas Secretary of State for election to the 25th Kansas Senate seat on October 26, 2011, Smith did so for the 8th Kansas Senate seat on September 9, 2011, and Mason did so for the 31st Kansas Senate seat on March 6, 2012, after having publically filed an Appointment of Treasurer for his Senate campaign on September 26, 2011 and having conducted a press conference publically announcing his candidacy for the 31st Senate seat on January 3, 2012. All Kansas senators, including the

incumbents in these three Senate districts—District 25 Senator Jean Schodorf, District 31 Senator Carolyn McGinn, and District 8 Senator Tim Owens, Senate Reapportionment Committee Chair – had access to this public information regarding the known Senate candidacies of their opponents, Landwehr, Mason and Smith, at the time they were proposing, deliberating and voting on Senate reapportionment plans during the 2012 Legislative session.

3. There are four 2012 Kansas Senate district reapportionment plans that were voted favorably for passage by the Senate Reapportionment Committee or passed by the Kansas Senate, which are being recommend to the Court for adoption by various parties to this proceeding: "Ad Astra," see Joint Stipulation Ex. 66 (Population Summary) and 67 (Map); "Ad Astra Revised JoCo Wichita 3," see Joint Stipulation Ex. 68 (Population Summary) and 69 (Map), contained in HB 2371, see Joint Stipulation Ex. 110, passed by the Kansas Senate 21-19 on May 1, 2012 but defeated in the Kansas House 43-72 on May 2, 2012; "Buffalo 30," see Joint Stipulation Ex. 70 (Population Summary) and 71(Map); and "Buffalo 30 Revised," see Joint Stipulation 72 (Population Summary) and 73 (Map), contained in HB 2807, see Joint Stipulation 127, passed by the Kansas Senate 21-17 on May 18, 2012, but not considered by the House.

4. All four of the Kansas Senate district reapportionment plans described in Paragraph 3 are configured in such a way as to exclude Mason's residence from the 31st Senate District for which he has filed as a candidate, in most cases by dividing the very residential subdivision in which he resides such that his residence is placed approximately 700 yards outside the proposed new 31st Kansas Senate District. All four such plans maintain incumbent Senator McGinn's residence within the 31st District.

5. Three of the four Kansas Senate district reapportionment plans described in Paragraph 3 – "Ad Astra," "Buffalo 30," and "Buffalo 30 Revised"-- are configured in such a way as to exclude Landwehr's residence from the 25th Senate District for which she has filed as a candidate, despite the fact that she resides no more than 12 blocks from the residence of the 25th District's incumbent Senator, Jean Schodorf. These three plans all maintain incumbent Senator Schodorf's residence within the 25th District.

6. Three of the four Kansas Senate district reapportionment plans described in Paragraph 3 – "Ad Astra," "Buffalo 30," and Buffalo 30 Revised" – are configured in such a way as to exclude Smith's residence from the 8th Senate District for which he had filed as a candidate, in the case of the "Buffalo 30" plans by placing him in the 10th Senate District, only eight houses, or approximately 500 feet, from the 10th District's boundary with the 8th District. These three plans all maintain Reapportionment Chair Senator Owen's residence within the 8th District.

7. The fourth of the four Kansas Senate district reapportionment plans described in Paragraph 3 – "Ad Astra Revised JoCo Wichita 3" – are configured in such a way as to keep the residences of Landwehr and Smith each barely inside the boundaries of the 25th and 8th Senate Districts, respectively, for which they have filed, but at the expense of dividing and destroying the one effectively majority/minority district (predominantly Hispanic) in the current Kansas Senate, incumbent Senator Allan Schmidt's 36th District. This plan also strays furthest from the "one person one vote" principle enshrined in the 14th Amendment to the United States Constitution, as it provides by far the largest variances, or deviations, from the ideal equalized Senate district population of 70,986, based on 2010 Census figures, of any reapportionment plan considered by either chamber

of the Legislature this year, with 33 of 40 districts having a population deviation of over 3%, 22 of 40 over 4%, 20 of 40 over 4.5%, yielding a relative mean deviation of 3.89%.

8. None of the four Senate district reapportionment plans described in Paragraph 3 take into account the westward direction of major population growth in the 25th Kansas Senate District for which Landwehr has filed as a candidate.

9. Two 2012 Kansas Senate district reapportionment plans considered in the Kansas House of Representatives – "For the People 13b," see Joint Stipulation Ex. 78 (Population Summary) and 79 (Map), and SB 102, see Joint Stipulation Ex. 124, which was passed by the Kansas House of Representatives by a vote of 67-50 on May 10, 1012, but never acted on by the Kansas Senate; and "Wheat State 5," see Joint Stipulation Ex. 82 (Population Summary) and 83 (Map) – establish new Senate district boundaries in such a way that the residences of Landwehr, Mason and Smith remain in the 25th, 31st and 8th Senate Districts, respectively for which they have filed as candidates. Moreover, neither of these two plans dissolve or dilute the voting strength of the one majority/minority district (predominantly Hispanic) and community of interest in the current Senate, incumbent Senator Allan Schmidt's 36th District 36, and both maintain a much lower relative mean deviation from the ideal equalized Senate district population of 70,986 – 2.07% and 2.09%, respectively – than that yielded by the "Ad Astra Revised JoCo Wichita 3" Senate reapportionment plan.

## D. Conclusions

1. The "Ad Astra," "Buffalo 30," and "Buffalo 30 Revised" Senate district reapportionment plans voted favorably for passage by the Kansas Senate Reapportionment Committee and, in the latter case, passed by the Kansas Senate – and, with respect to Mr. Mason only the "Ad Astra Revised JoCo Wichita 3" reapportionment plan as well -- were drawn up by the Senate purely or primarily for political reasons, as they each purposely were configured in a strained and tortured manner to place the residences of three known challengers, Representative Landwehr, Mr. Mason, and Representative, barely outside the Senate districts in which they each had resided for years, and for which they had previously publicly filed as candidates, in order to protect the incumbents in these districts, Senators Schodorf, McGinn and Owens, from serious challenges to their re-election. As such, each of these reapportionment plans constitute blatant political gerrymandering in contravention of the constitutional requirements of the United State and Kansas Constitutions, in that they fail to keep Senate districts as compact as possible, do not protect the integrity and priority of existing political subdivisions, and fail to keep district boundaries easily identifiable and understandable by voters, as required by the case law described above and by Paragraph 4(b), (c) and (f) of the Legislature's Guidelines, see Joint Stipulation, Ex. 9, As such, each of these Senate district reapportionment plans is fatally flawed and should be rejected by the Court in its deliberations on fashioning a Kansas Senate reapportionment plan.

2. The "Ad Astra Revised JoCo Wichita 3" Senate district reapportionment plan passed by the Senate, while maintaining Representatives Landwehr's and Smith's residences barely inside their current Senate districts, for which they have filed as candidates, does so by dividing and destroying the one effectively majority/minority district (predominantly Hispanic) in the current

Kansas Senate, incumbent Senator Allan Schmidt's 36th District, in contravention of case law and Guidelines requirements that redistricting plans will have neither the purpose nor the effect of diluting minority voting strength. See Joint Stipulation, Ex. 9, Paragraph 3. This plan also strays furthest from the "one person one vote" principle enshrined in the 14th Amendment to the United States Constitution, as it provides by far the largest variances, or deviations, from the ideal equalized Senate district population of 70,986, based on 2010 Census figures, of any reapportionment plan considered by either chamber of the Legislature this year, with 33 of 40 districts having a population deviation of over 3%, 22 of 40 over 4%, 20 of 40 over 4.5%, yielding a relative mean deviation of 3.89%. As such, the "Ad Astra Revised JoCo Wichita 3" reapportionment plan is also fatally flawed and should be rejected by the Court in its deliberations on fashioning a Kansas Senate reapportionment plan.

3. The "Wheat State 5" and "For the People 13b" Senate reapportionment plans considered, and in the latter case passed, by the Kansas House of Representatives, maintain known challengers for election to the Kansas Senate in 2012 – including Representatives Landwehr and Smith and Mr. Mason – within the Senate districts in which they have resided for years, and for which they have publicly filed for election. As such, they avoid the political gerrymandering flaws of the reapportionment plans described in Paragraphs 1 and 2 above. In addition, they maintain the majority/minority 36th Kansas Senate District intact, thereby avoiding prohibited dilution of minority voting strength. They keep all Senate districts as compact and contiguous as possible, maintain the integrity and priority of existing political subdivisions as much as possible, recognize and maintain known communities of interest, and ensure tht Senate districts remain easily identifiable and understandable by voters, all as required by the case law described above and by the Guidelines. See Joint Stipulation, Ex. 9. Finally, these two reapportionment plans

maintain a low relative mean deviation from the ideal equalized Senate district population of 70,986 – 2.07% and 2.09%, respectively, in consonance with the "one person one vote" mandate of the Equal Protection Clause in the 14th Amendment. As such, both of these reapportionment plans are constitutionally sound, satisfy known legal reuirements and the provisions of the Guidelines, are fair and just.

Accordingly, Intervenors Landwehr, Mason and Smith urge the Court to adopt the "Wheat State 5," or, in the alternative, the "For the People 13b" Senate district reapportionment plan in their entirety.

Dated: May 29, 2012

Respectfully submitted,

s/John J. Rubin
John J. Rubin #9408
JOHN J. RUBIN, ATTORNEY-AT-LAW
13803 W. 53rd ST
Shawnee, KS 66216
913-558-4967 Phone
913-962-4295 Fax
rubinshaw@aol.com
*Attorney for Intervenor-Plaintiffs*

CERTIFICATE OF SERVICE

I hereby declare and certify that I filed Intervenor-Plaintiffs Brenda Landwehr's, Gary Mason's and Greg A. Smith's Trial Brief with the Court and served copies thereof on all parties by way of the Court's CM/ECF System, Electronic Mail, this 29th day of May, 2012.